**130 Nev., Advance Opinion 47**
IN THE SUPREME COURT OF THE STATE OF NEVADA

CHARLES B. HARRIS,
Appellant,
vs.
THE STATE OF NEVADA,
Respondent.

No. 61424

**FILED**

JUN 1 2 2014



TRACIE K. LINDEMAN
CLERK OF SUPREME COURT
BY
CHIEF DEPUTY CLERK

Proper person appeal from an order denying a motion to withdraw a guilty plea. Eighth Judicial District Court, Clark County; Valorie J. Vega, Judge.

*Reversed and remanded.*

Charles B. Harris, Indian Springs,
in Proper Person.

Catherine Cortez Masto, Attorney General, Carson City; Steven B. Wolfson, District Attorney, and Steven S. Owens, Chief Deputy District Attorney, Clark County,
for Respondent.

___

BEFORE THE COURT EN BANC.

*OPINION*

By the Court, HARDESTY, J.:

Appellant Charles Harris pleaded guilty and was convicted of several felony offenses. Harris did not challenge his guilty plea before sentence was imposed and did not file an appeal from the judgment of conviction. Instead, he filed a motion to withdraw the guilty plea approximately seven months after the judgment of conviction was entered.

14-19228

A post-conviction petition for a writ of habeas corpus is the *exclusive remedy* for challenging the validity of a conviction or sentence aside from direct review of a judgment of conviction on appeal and "remedies which are incident to the proceedings in the trial court." NRS 34.724(2)(a). However, in *Hart v. State*, 116 Nev. 558, 1 P.3d 969 (2000), this court allowed another remedy when it summarily concluded that a motion to withdraw a guilty plea filed after the judgment of conviction is a remedy that is "incident to the proceedings in the trial court." Because our *Hart* decision failed to analyze the phrase "incident to the proceedings in the trial court," or consider the purpose behind the exclusive-remedy provision in NRS 34.724(2), it is unsound. After examining the Uniform Post-Conviction Procedure Act, Nevada's post-conviction history, and the temporal definition of the phrase at issue, we conclude that, after sentence has been imposed, the statutory post-conviction habeas petition takes the place of a motion to withdraw a guilty plea. We therefore overrule *Hart* and reverse the district court's order denying the motion on the merits and remand for the district court to treat Harris' motion as a post-conviction petition for a writ of habeas corpus and to provide Harris with an opportunity to cure any pleading defects.

## FACTS AND PROCEDURAL HISTORY

Harris was charged in 2010 with burglary, forgery, and theft for cashing a forged check from the Perini Building Company at the Orleans Hotel and Casino. Additionally, the State had filed a notice of intent to seek habitual criminal adjudication based on five prior felony convictions. Harris entered a guilty plea to the offenses of burglary, forgery, and theft in exchange for the State's agreement not to seek habitual criminal adjudication at sentencing. The judgment of conviction was entered on November 16, 2011, and Harris received two consecutive

SUPREME COURT
OF
NEVADA

(O) 1947A

sentences of 24 to 60 months and a consecutive sentence of 12 to 34 months. No direct appeal was taken.

Instead, on the date the judgment of conviction was entered, Harris filed a proper person post-conviction petition for a writ of habeas corpus in the district court alleging that he received ineffective assistance of counsel. The district court denied the petition, and this court affirmed the decision of the district court on appeal. *Harris v. State*, Docket No. 60289 (Order of Affirmance, November 15, 2012). Harris then filed a second post-conviction petition for a writ of habeas corpus on February 29, 2012, raising similar claims to those raised in the first petition.

While his second petition was pending, on June 21, 2012, Harris filed a motion to withdraw a guilty plea. In his motion, Harris claimed: (1) the information, as to the forgery count, failed to set forth the elements of ownership and lack of authority, making his plea to forgery unknowing and involuntary; (2) the prosecutor failed to disclose that it was without an accuser; (3) he received ineffective assistance of counsel; and (4) his plea was involuntary and unknowing. Despite this being Harris' third post-conviction challenge to his conviction, the district court denied the motion on the merits.

## DISCUSSION

NRS 176.165 provides in relevant part that "[t]o correct manifest injustice, the court after sentence may set aside the judgment of conviction and permit the defendant to withdraw the plea." This language has in the past been construed to allow for a post-sentence motion to withdraw a guilty plea. *See, e.g., Hart*, 116 Nev. at 561-62, 1 P.3d at 971 (recognizing the availability of a post-conviction motion to withdraw a guilty plea); *Bryant v. State*, 102 Nev. 268, 272, 721 P.2d 364, 368 (1986) (holding that claims challenging the validity of the plea should be raised in a post-conviction petition or a motion to withdraw a guilty plea);

*Hargrove v. State*, 100 Nev. 498, 501-02, 686 P.2d 222, 224-25 (1984) (recognizing the right to appeal from the denial of a post-conviction motion to withdraw a guilty plea).

Because the validity of a guilty plea may be challenged in a post-conviction petition for a writ of habeas corpus, *see* NRS 34.810(1)(a) (recognizing that the scope of claims available to challenge a conviction based upon a guilty plea include a claim that the plea was involuntarily or unknowingly entered or that the plea was entered without the effective assistance of counsel), it would appear that allowing the same challenge to be raised after sentencing in a separate motion to withdraw a guilty plea would run afoul of NRS 34.724(2)(b). That statute, which was adopted in 1991 and became effective on January 1, 1993, *see* 1991 Nev. Stat., ch. 44, §§ 4, 32, at 75, 92, provides that a post-conviction petition for a writ of habeas corpus "[c]omprehends and takes the place of all other common-law, statutory or other remedies which have been available for challenging the validity of the conviction or sentence, and must be used exclusively in place of them." NRS 34.724(2)(b). There are, however, two exceptions to the exclusive-remedy provision: an appeal from the judgment of conviction and "any remedies which are incident to the proceedings in the trial court."[1] NRS 34.724(2)(a). Thus, a post-sentence motion to withdraw a

---

[1]Article 6, Section 6 of the Nevada Constitution and NRS 34.724(1) require a person seeking habeas corpus relief be under a sentence of imprisonment (or death) for the conviction challenged at the time the conviction is challenged. The remedy of a post-conviction petition for a writ of habeas corpus is further limited in scope to claims challenging a violation of state law or a violation of constitutional rights. NRS 34.724(1). Thus, any remedy that is available only to a person who is no longer under a sentence of imprisonment or death or allows a person to raise a claim that is outside the scope of a post-conviction petition for a writ of habeas corpus is not subject to the exclusive-remedy language in NRS 34.724(2)(b) regardless of whether the remedy is or is not incident to

*continued on next page...*

guilty plea, a statutory remedy, would not be eliminated by the exclusive-remedy provision if it is "incident to the proceedings in the trial court."

The question of whether a post-sentence motion to withdraw a guilty plea is a remedy that is "incident to the proceedings in the trial court" was previously posed to this court in *Hart*. Hart had filed a motion to withdraw his guilty plea more than six years after his judgment of conviction was entered. 116 Nev. at 560, 1 P.3d at 970. The lower court treated the motion as a post-conviction petition for a writ of habeas corpus and denied it as procedurally time-barred pursuant to NRS 34.726(1). *Id.* at 560-61, 1 P.3d at 970. On appeal, the *Hart* court rejected the argument that the exclusive-remedy provision eliminated the post-sentence motion to withdraw a guilty plea, holding instead that the motion was "incident to the proceedings in the trial court." *Id.* at 561-62, 1 P.3d at 971. The determination that the motion was "incident to the proceedings in the trial court" was made without any analysis beyond a statement that Nevada case law appeared to recognize the motion to withdraw a guilty plea.[2] *Id.*

---

*...continued*
the proceedings in the trial court. For example, the petition for a writ of *coram nobis* was not superseded by the post-conviction petition for a writ of habeas corpus because the petition for a writ of *coram nobis* is only available to a person who is no longer in custody on the conviction challenged. *See Trujillo v. State*, 129 Nev. ___, ___, 310 P.3d 594, 595-96 (2013).

[2]The cited examples included: *Hargrove*, 100 Nev. 498, 686 P.2d 222; *Bryant*, 102 Nev. 268, 721 P.2d 364; and *Barajas v. State*, 115 Nev. 440, 991 P.2d 474 (1999), *abrogated on other grounds by Padilla v. Kentucky*, 559 U.S. 356 (2010), *as noted in Chaidez v. United States*, 568 U.S. ___, 133 S. Ct. 1103 (2013). None of those cases addressed whether the current statutory post-conviction habeas petition took the place of a post-sentence motion to withdraw a guilty plea.

The *Hart* court implicitly recognized a problem created by its decision to allow two post-conviction remedies for defendants who have pleaded guilty to attack the validity of their guilty pleas: whereas the statutory post-conviction habeas petition is subject to time restrictions, NRS 34.726; NRS 34.800, and rules that limit the issues that may be raised, NRS 34.810(1)(a), and the filing of second and successive petitions, NRS 34.810(2), the statute addressing withdrawal of a guilty plea contains no similar restrictions. *See generally Hart*, 116 Nev. at 563-64, 1 P.3d at 972. To correct that problem, the court placed a limitation on the filing of a motion to withdraw a guilty plea relying on the "manifest injustice" language in NRS 176.165. *Id.* at 563, 1 P.3d at 972. The court explained that "[w]hether an 'injustice' is 'manifest' will depend" in part on "whether the State would suffer prejudice if the defendant is permitted to withdraw his or her plea" and therefore "consideration of the equitable doctrine of laches is necessary in determining whether a defendant has shown 'manifest injustice' that would permit withdrawal of a plea after sentencing." *Id.* at 563, 1 P.3d at 972. Laches requires the court to consider several factors including: "(1) whether there was an inexcusable delay in seeking relief; (2) whether an implied waiver has arisen from the defendant's knowing acquiescence in existing conditions; and (3) whether circumstances exist that prejudice the State." *Id.* at 563-64, 1 P.3d at 972. This court placed the burden of demonstrating that laches should not apply on *the defendant*.[3] *Id.* The *Hart* court further indicated that laches may be applied even when the delay was less than one year from entry of

---

[3]Similarly, the petitioner bears the burden of demonstrating good cause and prejudice to excuse the procedural bars that apply to a post-conviction petition for a writ of habeas corpus. *See* NRS 34.726(1); NRS 34.810(3).

Supreme Court
OF
Nevada

(O) 1947A

6

the judgment of conviction, but provided no guidance for when it would be appropriate to conclude that a delay of less than one year was inexcusable. *Id.*

The lack of guidance in determining when laches should apply is keenly present in this case. Harris filed his motion within one year from entry of the judgment of conviction, but this was Harris' third post-conviction challenge to his conviction in the one-year period following his conviction. Harris provided no explanation on the face of the motion why he should be allowed to litigate a third post-conviction challenge to his conviction. And despite the fact that *Hart* made it Harris' burden to plead facts to overcome application of laches and made laches part of the "manifest injustice" standard that determines whether a defendant should be allowed to withdraw a guilty plea after sentencing, the district court apparently overlooked the doctrine of laches in denying the motion on the merits.

The doctrine of laches announced in *Hart* also has some peculiarities that have engendered much confusion with jurists and parties in this state. Laches generally is asserted by a party to end untimely litigation. *See, e.g., Save the Peaks Coal. v. U.S. Forest Serv.*, 669 F.3d 1025, 1031 (9th Cir. 2012) ("Laches is an equitable defense that limits the time in which a party may bring suit."); *see also Moguel v. State*, 966 A.2d 963, 967, 969 (Md. Ct. Spec. App. 2009) (holding that the equitable doctrine of laches is a defense to a petition and recognizing that generally laches must be pleaded by the party); *Johnson v. State*, 714 N.W.2d 832, 839 (N.D. 2006) (holding that laches is an affirmative defense against applications for post-conviction relief). *Hart*, however, flipped the doctrine from a defense that must be asserted by the opposing party (the State) to a filing requirement that the criminal defendant must satisfy in order to litigate the merits of his or her claims. And the factors set forth

SUPREME COURT
OF
NEVADA

7

(O) 1947A

in *Hart* do not wholly lend themselves to a defendant affirmatively pleading them. For example, one of the laches factors looks at whether there are circumstances that prejudice the State. Surely the State, not the defendant, is in the best position to address that factor. The peculiar nature of the use of the doctrine of laches announced in *Hart* has led to much confusion and inconsistent application of the doctrine of laches. In many instances, the defendant neglects to address the laches factors in his motion, the State fails to raise the issue of laches (even when the motion is filed many years after the judgment of conviction), and the district court summarily denies the motion, obscuring the basis for the decision and complicating this court's appellate review.

The confusing and inconsistent application of the doctrine of laches caused by the *Hart* decision suggests that we should reexamine the holding in *Hart* that a post-sentence motion to withdraw a guilty plea is "incident to the proceedings in the trial court" and not subject to the exclusive-remedy language of NRS 34.724(2)(b). Although the doctrine of stare decisis militates against overruling precedent, *Armenta-Carpio v. State*, 129 Nev. ___, ___, 306 P.3d 395, 398 (2013), "'when governing decisions prove to be 'unworkable or are badly reasoned," they should be overruled,'" *State v. Lloyd*, 129 Nev. ___, ___, 312 P.3d 467, 474 (2013) (quoting *Egan v. Chambers*, 129 Nev. ___, ___, 299 P.3d 364, 367 (2013) (quoting *Payne v. Tennessee*, 501 U.S. 808, 827 (1991))).

The court in *Hart* did not provide any analysis to explain its determination that a post-sentence motion to withdraw a guilty plea is "incident to the proceedings in the trial court." Nevada first adopted the incident-to-the-trial-court-proceedings language and the exclusive-remedy language in 1967 when the Legislature adopted the Uniform Post-Conviction Procedure Act (UPCPA) and created a post-conviction petition for relief as part of NRS Chapter 177. *See* 1967 Nev. Stat., ch. 523, § 317,

8

at 1447; Legislative Comm'n of the Legislative Counsel Bureau, *Report of the Subcomm. for Revision of the Criminal Law to the Legislative Comm'n*, in *Revision of Nevada's Substantive Criminal Law and Procedure in Criminal Cases*, Bulletin No. 66, at 3 (Nev., Nov. 18, 1966). The Legislature maintained this language when it streamlined Nevada's dual post-conviction remedies and adopted the singular remedy of a post-conviction petition for a writ of habeas corpus in 1991 (effective January 1, 1993). *See* 1991 Nev. Stat., ch. 44, §§ 4, 32, at 75, 92. Thus, it is useful, if not critical, to examine the UPCPA and Nevada's post-conviction history in determining whether a post-sentence motion to withdraw a guilty plea is an available remedy to challenge the validity of a guilty plea.

*Uniform Post-Conviction Procedure Act*

Prior to 1955, few states provided a cohesive approach to post-conviction relief despite the fact that the United States Supreme Court had recognized the obligation of the states to provide state prisoners with a means to raise claims of federal constitutional violations. *See Mooney v. Holohan*, 294 U.S. 103, 113 (1935) ("Upon the state courts, equally with the courts of the Union, rests the obligation to guard and enforce every right secured by that Constitution."); *Young v. Ragen*, 337 U.S. 235, 239 (1949) (requiring the state to provide a "clearly defined method by which [state prisoners] may raise claims of denial of federal rights"). In response, the Commissioners on Uniform State Laws proposed the first post-conviction procedure act in 1955. Note, *The Uniform Post-Conviction Procedure Act*, 69 Harv. L. Rev. 1289 (1956). Over the next decade, few states adopted a uniform post-conviction remedy and the variability in the scope and availability of post-conviction remedies rendered those remedies largely inadequate. *Case v. Nebraska*, 381 U.S. 336, 338 (1965) (Clark, J., concurring).

In 1966, the commissioners submitted a revised version of the UPCPA with the objective of establishing a post-conviction procedure for the states to use that met the minimum standards of justice. UPCPA prefatory notes, 11 U.L.A. 663 (1966). The scope of the claims available under the 1966 UPCPA included claims: (1) that the conviction or the sentence was in violation of the United States Constitution or the constitution or laws of the enacting state; (2) that the court was without jurisdiction to impose sentence; (3) that the sentence exceeded the maximum authorized by law; (4) that there existed evidence of material facts, not previously presented and heard, that required vacation of the conviction or sentence in the interest of justice; (5) that the petitioner had expired his term or was otherwise held or restrained unlawfully; or (6) that the conviction was otherwise subject to collateral attack on grounds previously available at common law or under statute or writ. *Id.* § 1(a), at 666. The UPCPA further provided that it was the exclusive remedy, except for the remedy of direct review and any remedy incident to the proceedings in the trial court. *Id.* § 1(b), at 666.

It is not by happenstance that the commissioners used the word "uniform" to describe the remedy. The prefatory notes of the 1966 UPCPA emphasized that the post-conviction remedy "provides a single, unitary, post-conviction remedy to be used in place of all other state remedies (except direct review)." *Id.* prefatory notes, at 663. The prefatory notes further urged states to consider repealing "existing statutes on habeas corpus, *coram nobis* and statutory remedies, if any." *Id.* at 665. Even assuming that the State failed to repeal these other remedies, the prefatory notes indicate that the exclusive-remedy language "would seem to require a court to treat an application under such a remedy as made under this Act and governed by its provisions as to pleadings and procedure." *Id.* The commissioners noted that multiple

Supreme Court
OF
Nevada

(O) 1947A

10

remedies created confusion, delay, expense, and increased burdens on the courts. *Id.* at 663.

The commissioners once more revised the UPCPA in 1980, in pertinent part, replacing the "incident to the proceedings in the trial court" language with a provision stating that the UPCPA did not "affect any remedy incident to the prosecution in the trial court." *Id.* § 1(b), at 204 (1980). In the comments, the commissioners again emphasized that the exclusive-remedy provision "underscores the goal of eliminating the confusion of multiple, limited post-conviction remedies found in many jurisdictions that have not established a modern, simplified procedural system for determining the substantive merit of post-conviction litigation." *Id.*

*Nevada post-conviction history*

Nevada was one of many jurisdictions that had failed to develop a modern post-conviction remedy. Before 1967, Nevada's post-conviction relief system largely relied on a petition for a writ of habeas corpus and various motions to fill in the gaps when habeas corpus was inadequate because of the custody requirement set forth in Article 6, Section 6 of the Nevada Constitution. The challenges of this post-conviction approach were highlighted in *Warden v. Peters*, 83 Nev. 298, 429 P.2d 549 (1967). Peters sought to withdraw his guilty plea to one of two counts in a motion to vacate the conviction after his conviction had become final. *Id.* at 300, 429 P.2d at 550. The parties and district court agreed to a guilty plea to a lesser offense with concurrent terms, but problems occurred when the concurrent sentences could not be effectuated. *Id.* at 300-01, 429 P.2d at 551. The State then questioned whether a motion to vacate had been a proper vehicle for seeking post-conviction relief. *Id.* at 301, 429 P.2d at 551. The *Peters* court recognized the availability of a motion to vacate the conviction, reasoning that correction

Supreme Court
OF
Nevada

(O) 1947A

11

of a mistake that worked to the defendant's extreme detriment was within the inherent authority of the court, even though a petition for a writ of habeas corpus was likely the more appropriate vehicle to challenge the conviction. *Id.* The absence of a comprehensive post-conviction scheme appears to have largely driven the decision in *Peters* and created a landscape where various post-conviction motions arose to fill the gaps in available post-conviction remedies.

The Legislature in 1967 addressed the lack of post-conviction remedies and enacted two post-conviction remedies relevant to the issue at hand.[4] First, the Legislature enacted NRS 176.165, which allowed a motion to withdraw a guilty plea to be filed only before sentencing but also allowed the district court to set aside a judgment after sentencing and permit withdrawal of a guilty plea to correct manifest injustice.[5] 1967 Nev. Stat., ch. 523, § 245, at 1434. Second, the Legislature enacted the post-conviction procedure act. *Id.* § 317, at 1447. The legislative history indicates that the Legislature intended to "offer but one remedy" in post-conviction, which was designated as habeas corpus, and that the Legislature was adopting the UPCPA. Legislative Comm'n of the Legislative Counsel, *Report of the Subcomm. for Revision of the Criminal Law to the Legislative Comm'n*, in *Revision of Nevada's Substantive Criminal Law and Procedure in Criminal Cases*, Bulletin No. 66, at 3 (Nev., Nov. 18, 1966). The procedure, set forth in former NRS Chapter

---

[4]The work of the 1967 legislative session concluded shortly before *Peters* was decided, but the new remedies had not been available to Peters and were not addressed by the court in reaching its decision.

[5]At the same time, the Legislature repealed a prior statute, NRS 174.340(2), that allowed a district court to permit a guilty plea to be withdrawn only before judgment. 1967 Nev. Stat., ch. 523, § 447, at 1472.

177, provided that a post-conviction relief petition could be filed by any person convicted of a crime and under a sentence of death or imprisonment to challenge a constitutional violation (United States or Nevada), a violation of the laws of Nevada, that the court was without jurisdiction to impose the sentence, the sentence exceeded the maximum authorized by law, or that the conviction or sentence was otherwise subject to collateral attack upon any ground of alleged error previously available under "common law, statutory or other writ, motion, petition, proceeding or remedy." 1967 Nev. Stat., ch. 523, § 317, at 1447. Significantly, the exclusive-remedy provision of the UPCPA was adopted by the Legislature; former NRS 177.315(2) provided that the post-conviction relief petition "comprehends and takes the place of all other common law, statutory, or other remedies which have heretofore been available for challenging the validity of the conviction or sentence, and shall be used exclusively in place of them." *Id.* The post-conviction relief petition was, however, not to be a substitute for a direct appeal or "any remedies which are incident to the proceedings in the trial court." *Id.*

Problems with the post-conviction relief petition arose quickly after its enactment. One major problem was the denomination of the petition as a writ of habeas corpus when there was no custody requirement in the post-conviction relief statutes, but the Nevada Constitution only provided the district court with power to grant a writ of habeas corpus to an individual held in actual custody within the district. Nev. Const. art. 6, § 6. In *Marshall v. Warden*, this court, while acknowledging the problem with calling the post-conviction petition a "habeas corpus" petition given the custody requirement set forth in the Constitution, approved of the new post-conviction remedy. 83 Nev. 442, 444-45, 434 P.2d 437, 439 (1967), *superseded by statute as stated in Pellegrini v. State*, 117 Nev. 860, 34 P.3d 519 (2001). However, expressing

SUPREME COURT
OF
NEVADA

(O) 1947A

13

concern about eliminating the constitutional writ of habeas corpus, the court declared that individuals had a choice of remedies after conviction: a habeas corpus petition or the newly enacted and broader post-conviction relief petition. *Id.* at 445-46, 434 P.2d at 439-40. Given that the scope of claims available under the post-conviction relief petition was broader than the scope of claims available in a habeas corpus petition, the court indicated that the post-conviction relief petition would be the preferred course of action. *Id.* at 445, 434 P.2d at 439.

Despite the effort to limit post-conviction remedies reflected in the legislation adopted in 1967, the *Marshall* decision began a system of post-conviction relief in Nevada whereby convicted persons had several remedies available to challenge the validity of a guilty plea: a post-conviction relief petition pursuant to former NRS 177.315, a petition for a writ of habeas corpus under NRS Chapter 34, and a post-sentence motion to withdraw a guilty plea. The Legislature tinkered with some of these provisions over the years to try to curtail the mischief created in having separate post-conviction vehicles, *see Pellegrini v. State,* 117 Nev. 860, 870-73, 34 P.3d 519, 526-28 (2001) (setting forth a more in-depth history of the evolution of Nevada's post-conviction remedies), but ultimately the Legislature decided to adopt a single remedy.

Effective January 1, 1993, a single post-conviction remedy was created—the current post-conviction petition for a writ of habeas corpus filed pursuant to NRS 34.724. 1991 Nev. Stat., ch. 44, §§ 4, 32, at 75, 92. The new legislation included the exclusive-remedy language that had previously been a part of NRS Chapter 177. Pursuant to NRS 34.724(2)(b), a post-conviction petition for a writ of habeas corpus "[c]omprehends and takes the place of all other common-law, statutory or other remedies which have been available for challenging the validity of the conviction or sentence, and must be used exclusively in place of them."

Supreme Court
of
Nevada

(O) 1947A

14

And as stated earlier, excepted from the exclusive-remedy language are the remedy of a direct appeal and remedies that are "incident to the proceedings in the trial court." NRS 34.724(2)(a).

*Flaws in the Hart decision*

Examining both the UPCPA and Nevada post-conviction history reveals the flaws in *Hart*'s conclusion that a post-sentence motion to withdraw a guilty plea is "incident to the proceedings in the trial court." The UPCPA was intended to create a single, streamlined post-conviction remedy. Nevada's post-conviction history undeniably has moved toward adoption of a single post-conviction remedy to challenge a judgment of conviction or sentence. The *Hart* court provided no explanation for how allowing a separate post-sentence motion to withdraw a guilty plea served the stated intention of the Legislature to create a single post-conviction remedy or why a separate remedy was necessary when a post-conviction petition for a writ of habeas corpus encompassed the scope of claims available in a post-sentence motion to withdraw a guilty plea. *See* NRS 34.810(1)(a) (indicating that a post-conviction habeas petition may be used to challenge a judgment of conviction upon guilty plea "based upon an allegation that the plea was involuntarily or unknowingly entered or that the plea was entered without effective assistance of counsel"). In fact, doing so circumvents the Legislature's intention to adopt a single remedy. A single post-conviction remedy was desired not just because of the burdens on the courts in juggling the many statutory and common-law remedies, but for defendants themselves to reduce confusion and to ensure that constitutional claims would be heard by the courts in a timely manner. Having to navigate multiple remedies, with multiple procedural hurdles, at times resulted in the default of constitutional claims due to the defendant's ignorance regarding the proper remedy and applicable rules. The decision in *Hart* fails to evaluate these concerns in concluding without

SUPREME COURT
OF
NEVADA

(O) 1947A

analysis that the post-sentence motion to withdraw a guilty plea is "incident to the proceedings in the trial court."

*Defining "incident to the proceedings in the trial court"*

The decision in *Hart* also ignored this court's one prior attempt to define the meaning of the phrase "incident to the proceedings in the trial court"—*Passanisi v. State*, 108 Nev. 318, 831 P.2d 1371 (1992). In a decision addressing the availability of a motion to modify sentence and the appealability of an order denying such a motion, the *Passanisi* court indicated that challenges that directly attack the decision of the district court itself are incident to the proceedings in the trial court and are not collateral or post-conviction attacks.[6] *Id.* at 321, 831 P.2d at 1373.

However, there are problems with the definition used in *Passanisi*. The definition includes claims that are more appropriately raised on direct appeal, for example, claims challenging the sentence imposed on constitutional or other grounds, a claim that the district court was actually biased, or claims that conditions rendered the proceedings unfair. *See Franklin v. State*, 110 Nev. 750, 752, 877 P.2d 1058, 1059 (1994), *overruled on other grounds by Thomas v. State*, 115 Nev. 148, 979 P.2d 222 (1999). Further, the definition in *Passanisi* may implicate claims that may be raised in a post-conviction petition for a writ of habeas corpus because the errors involve a violation of constitutional rights or state law. *See* NRS 34.724(1). This definition then is contrary to our Legislature's intention to adopt a single post-conviction remedy. A definition that focuses on the types of claims raised also creates confusion and may be

---

[6]Even though *Passanisi* addresses the post-conviction-relief remedy under former NRS Chapter 177, the incident-to-the-trial-court-proceedings language is the same in both the former Chapter 177 remedy and NRS 34.724(2)(a).

abused as litigants attempt to shoehorn claims to fit within the limited framework of a claim of district court error. Because the definition in *Passanisi* includes claims that may be raised elsewhere and may be confusing or subject to abuse, we conclude that this definition is inadequate to the task of providing a meaningful understanding of the phrase "incident to the proceedings in the trial court," and we overrule this portion of the decision in *Passanisi*.

Rather than focusing on the type of claims raised, a more meaningful definition involves a temporal element. Webster's dictionary defines "incident" as "something dependent on or subordinate to something else of greater or principal importance." *Merriam Webster's Collegiate Dictionary* 629 (11th ed. 2007). In this context, the something else of greater or principal importance is the final disposition of the proceedings in the trial court at sentencing; decisions made prior to or at sentencing are subordinate to the final disposition of the case. Thus, we hold that a motion is "incident to the proceedings in the trial court" when it is filed prior to sentencing. This temporal definition makes sense given that decisions of the district court made in an intermediate order or proceeding may be reviewed on direct appeal from the judgment of conviction. *See* NRS 177.045. The temporal definition is also in keeping with the prefatory notes in the UPCPA that the post-conviction remedy provides a "single, unitary, post-conviction remedy to be used in place of all other state remedies (except direct review)." UPCPA prefatory notes, 11 U.L.A. 663 (1966). And the temporal definition effectuates the Legislature's intention to create a single post-conviction remedy in Nevada. Expanding the remedies incident to the proceedings in the trial court to include a number of post-conviction motions ignores the important objective of the UPCPA. Thus, a motion to withdraw the guilty plea filed

after sentencing is not "incident to the proceedings in the trial court," and we overrule that portion of the decision in *Hart* that concluded otherwise.

*Habeas corpus is the exclusive remedy to challenge the validity of the guilty plea after sentencing*

Given our determination that a post-sentence motion to withdraw a guilty plea is not a remedy that is "incident to the proceedings in the trial court," the motion is subject to the exclusive-remedy language in NRS 34.724(2)(b). The exclusive-remedy language in NRS 34.724(2)(b) provides that a post-conviction petition for a writ of habeas corpus takes the place of statutory remedies previously available to challenge the validity of a judgment of conviction. The statutory remedy of a post-sentence motion to withdraw a guilty plea adopted in 1967, *see* 1967 Nev. Stat., ch. 523, § 245, at 1434, was eliminated by the adoption of NRS 34.724(2)(b) in 1991 (effective January 1, 1993), *see* 1991 Nev. Stat., ch. 44, §§ 4, 32, at 75, 92. Thus, a post-conviction petition for a writ of habeas corpus provides the exclusive remedy for a challenge to the validity of the guilty plea made after sentencing for persons in custody on the conviction being challenged, and we overrule *Hart* to the extent that it concluded otherwise.

Our decision today that a motion to withdraw a guilty plea is not "incident to the proceedings in the trial court" when it is filed after sentencing and not available as a separate post-conviction remedy does not completely eviscerate the "manifest injustice" language in NRS 176.165. Rather, we believe that the Legislature's recognition that the district court may permit withdrawal of the guilty plea after sentencing to "correct manifest injustice" sets forth the standard for reviewing a post-conviction claim challenging the validity of a guilty plea, and our court has used the "manifest injustice" language of NRS 176.165 in reviewing challenges to the validity of a guilty plea raised in a post-conviction

petition for a writ of habeas corpus and a post-conviction petition for relief pursuant to former NRS Chapter 177. *See, e.g., Aswegan v. State*, 101 Nev. 760, 761, 710 P.2d 83, 83 (1985), *overruled in part by Little v. Warden*, 117 Nev. 845, 34 P.3d 540 (2001); *Meyer v. State*, 95 Nev. 885, 888, 603 P.2d 1066, 1067 (1979), *overruled in part by Little*, 117 Nev. 845, 34 P.3d 540.

In the case of future filings and for any currently pending post-sentence motion to withdraw a guilty plea, the district court should construe the motion to be a post-conviction petition for a writ of habeas corpus and require the defendant to cure any defects (filings not in compliance with the procedural requirements of NRS Chapter 34) within a reasonable time period selected by the district court.[7] *See Miles v. State*, 120 Nev. 383, 385-87, 91 P.3d 588, 589-90 (2004) (recognizing that NRS Chapter 34 does not prohibit the amendment of a petition to cure pleading defects). Because Harris should have filed a post-conviction petition for a writ of habeas corpus in compliance with the procedural requirements of NRS Chapter 34 and because the district court erroneously reached the merits of the motion to withdraw the plea without any reference to the fact that it was the third attempt to challenge the conviction, we reverse the decision of the district court and remand with instructions to construe the motion as a post-conviction petition for a writ of habeas corpus and to

---

[7]If the defendant cannot satisfy the custody requirement of habeas corpus, this court has recognized the availability of the common-law writ of *coram nobis* for persons not in custody challenging a conviction on very limited factual grounds. *See Trujillo v. State*, 129 Nev. ___, ___, 310 P.3d 594, 603 (2013).

provide Harris an opportunity to cure any defects within a reasonable period of time set by the district court.[8]

_____, J.
Hardesty

We concur:

_____, C.J.
Gibbons

_____, J.
Pickering

_____, J.
Parraguirre

_____, J.
Douglas

_____, J.
Cherry

---

[8]We have reviewed all documents that Harris has submitted in proper person to the clerk of this court in this matter, and we conclude that no relief based upon those submissions is warranted. To the extent that Harris has attempted to present claims or facts in those submissions which were not previously presented in the proceedings below, we have declined to consider them in the first instance.

SAITTA, J., concurring:

I concur in the result only.

_____, J.
Saitta